**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

MORE AUTOMOTIVE PRODUCTS, INC.,                    Case No:
a Puerto Rico corporation,

      Plaintiff,

      v.

DOLLAR RENT A CAR, INC.,
an Oklahoma corporation,

      Defendant.

_____/

**COMPLAINT**

Plaintiff MORE AUTOMOTIVE PRODUCTS, INC. (hereinafter "MAP"), by and through its counsel, and sues Defendant, DOLLAR RENT A CAR, INC. (hereinafter "Dollar"), and alleges as follows:

**NATURE OF THE ACTION**

1. This action is brought pursuant to the failure to renew a Dollar Rent A Car Franchise Agreement (the "Franchise Agreement") entered into between Plaintiff and Defendant. Defendant has breached the terms of the Franchise Agreement and has violated the laws of Puerto Rico that govern the parties' relationship through its failure to renew and, thus, effectively terminating the Franchise Agreement absent "good cause."  As a result of Defendant's wrongful conduct, Plaintiff seeks injunctive relief.

2. Section 29.3 of the subject Franchise Agreement contains an arbitration provision. Under the terms of that provision, either party to the Franchise Agreement may seek, *inter alia*, injunctive relief from a Court of competent jurisdiction so long as that party also files an action with the American Arbitration Association for a determination on the merits of the parties' dispute.

3.      To that end, as required under section 29.3 of the subject Franchise Agreement, MAP has previously filed an action with the American Arbitration Association seeking an award of monetary damages and/or specific performance.

## THE PARTIES

4.      Plaintiff MAP is a Puerto Rico corporation with its principal place of business located at Ave. Baldorioty de Castro #100, KM 10.1, Marginal Los Angeles, Carolina, Puerto Rico 00979.

5.      Defendant Dollar is an Oklahoma corporation with its principal place of business located at 8501 Williams Road, Estero, Florida 33928.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 (a)(1) as the parties are diverse, and the value or amount of the dispute in controversy is greater than seventy-five thousand dollars ($75,000).

7.      As a result of Dollar's bad faith actions, as detailed herein, MAP cannot precisely calculate its damages. However, MAP estimates that such damages total an amount greater than seventy-five thousand dollars ($75,000).

8.      The Court possesses personal jurisdiction over Dollar pursuant to Florida Statute § 48.193(1)(a)(1) on the grounds that Dollar has and is operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) given that Dollar resides in this District.

## STATEMENT OF FACTS

10.     MAP is a Puerto Rico corporation that was formed in 1995.

11.     Since approximately 1996, MAP has operated a Dollar Rent A Car franchise in Puerto Rico and has created, developed and cultivated a highly reputable business for rental cars under the Dollar Rent A Car business in Puerto Rico.

12.     Dollar is a car rental agency, headquartered in Estero, Florida, with offices in many countries around the world. Dollar is owned by The Hertz Corporation, along with other agencies including Hertz Rent A Car, Firefly Car Rental and Thrifty Car Rental.

### *The Franchise Relationship and the Terms of the Franchise Agreement*

13.     On or about July 25, 2018, MAP and Dollar entered into the Franchise Agreement wherein MAP was granted the right to operate a Dollar Rent A Car business in Puerto Rico. *See* Franchise Agreement, attached hereto as **Exhibit "A."**

14.     Under the Franchise Agreement, it was agreed that:

     a.     the initial term of the Franchise Agreement would run from July 1, 2018 through July 1, 2023; *see* Ex. A, p. 59.

     b.     upon the expiration of the initial term, MAP was entitled to exercise its option to renew the franchise; *see* Ex. A, § 6.1.

15.     Importantly, section 18.2 of the Franchise Agreement, which discusses Dollar's right to terminate the Franchise Agreement, states that "[i]n order to terminate this Agreement pursuant to this Section 18.2, [Dollar] shall notify [MAP] in writing of one or more breaches of this Agreement . . ." *See* Ex. A, § 18.2.

16.     At no point prior to July 1, 2023 did Dollar ever send MAP a Notice of Default notifying MAP of a breach of the Franchise Agreement.

17.     MAP's option to renew, as set forth in section 6.1 of the Franchise Agreement, was conditioned upon certain terms being met, which were:

| Conditions for renewal set forth in section 6.1 | MAP's compliance with the conditions |
|---|---|
| a. providing written notice of its intent to renew the franchise relationship | a. notice was provided in writing on September 30, 2022 |
| b. have paid all amounts owed to Dollar | b. all sums that were owed were paid |
| c. have complied with then-current qualification and training requirements | c. all then-current qualification and training requirements were met and no notice from Dollar ever stated otherwise |
| d. have paid Dollar's out-of-pocket costs relating to the application | d. the out-of-pocket fees were not due to be paid until the renewal franchise agreement was signed |
| e. execute a general release | e. no release was provided by Dollar for MAP to execute |
| f. refurbish, repair, replace or obtain equipment and systems necessary to operate a Dollar business | f. no such request was made by Dollar at that time |
| g. have achieved performance requirements set forth in Attachment C to Franchise Agreement | g. achieved performance requirements set forth in Attachment C to Franchise Agreement |
| h. Dollar continues to have a program for the continued operation of Dollar franchises and is offering new franchises at the time of renewal | h. at that time of renewal, Dollar continued to have a program for the continued operation of Dollar franchises and was offering new franchises. |

*See* Ex. A, § 6.1.

18. Dollar confirmed the terms of renewal in its letter to MAP dated December 16, 2022, which provided:

We are writing you concerning your franchise agreement dated July 1, 2018, for the territory of Puerto Rico (the "Agreement") which will expire on July 1, 2023. Pursuant to the terms of the Agreement, in order to qualify for a renewal of the Agreement, you must satisfy all applicable renewal requirements, including without limitation:

- You and, as applicable, your owners have successfully completed the application process, and provided us with all of the requested information and documents in connection therewith. Attached hereto is a copy of the franchise application. The application requires you to submit certain documentation, including without limitation English translations of your organizational documents (e.g., articles of incorporation, by-laws, LLC/operating agreement), resolutions authorizing execution of the franchise agreement and evidence of the signing authority of the person(s) who will be signing, and a complete list of all owners (direct and indirect) and their ownership percentages.

- You must also complete the anti-bribery / anti-corruption process with respect to all applicable person(s). A link will be sent by e-mail.

- You complete the franchise application and provide all requested financial information.

- You are and remain in compliance with the Agreement (or any other agreement with us or our affiliates), including without limitation regarding payment.

- You must sign our then-current renewal agreement. A copy of the present draft of the agreement is enclosed. The final form(s) of the agreement(s) will be provided closer to the expiration date and may contain updated terms.

- You pay any applicable renewal fee.

The foregoing is not intended to be a complete list of renewal requirements. FAILURE TO SATISFY ANY RENEWAL REQUIREMENTS WILL RESULT IN THE TERMINATION OF YOUR RIGHTS UNDER THE AGREEMENT EFFECTIVE AS OF ITS EXPIRATION DATE.

19.    On or about April 3, 2023, MAP completed and submitted the Franchise Application required by Dollar and otherwise complied with all the terms of the December 16, 2022 letter.

5

20. At that time, Dollar had not sent any Notice of Default to MAP and MAP was in substantial compliance with the terms of the Franchise Agreement.

21. In addition, Dollar did not notify MAP that it had not complied with section 6.1 of the Franchise Agreement and/or the terms of the December 16, 2022 letter.

22. As such, having met the conditions in the Franchise Agreement, MAP was entitled to exercise its right to enter into a new agreement with Dollar for five (5) years, which was the standard term length and was the term length that Dollar has been offering, and continues to offer, to its franchisees.

### Dollar Fails To Honor The Terms of the Franchise Agreement

23. Nevertheless, despite MAP meeting the conditions in the Franchise Agreement, by letter dated June 23, 2023, Dollar advised MAP that it would only provide MAP with a one (1) year extension of the Franchise Agreement. *See* June 23, 2023 Letter, attached hereto as **Exhibit "B."**

24. The extension offer made by Dollar was undeniably an ultimatum.

25. Indeed, the June 23, 2023 letter provided, as follows:

> 5.1 The Franchisee is required to respond to this letter either accepting or declining the extension option identified in section 3 above by no later than July 12th, 2023. In the event the Franchisee:
>
> > 5.1.1. does not accept the extension option by July 12th, 2023; and/or
> >
> > 5.1.2. declines the extension option or seeks to vary or introduce additional terms to those set out within this letter, including but not limited to those within sections 3 and 4 above;
>
> then the extension option shall lapse and any offers or suggestions of renewal of the Franchise Agreement shall be withdrawn, revoked and no longer capable of the Franchisee's acceptance.

6

> 5.2.   For the avoidance of doubt, if no extension period is agreed by the parties, the Franchise Agreement shall continue to expire on the Expiry Date.

*See* Ex. B, §§ 5.1-5.2.

26.     Although Dollar was aware of MAP's intent to renew the Franchise Agreement and was in possession of the requested documents necessary to effectuate the renewal since April 3, 2023, Dollar waited until only 8 days prior to the stated termination date of the Franchise Agreement to make such an ultimatum in order to improperly exert pressure on MAP to accede to Dollar's ultimatum of accepting a one year extension rather than the five year renewal that MAP was entitled to receive.

27.     The stated basis for Dollar only offering a one-year extension rather than the mandated five year renewal was that Dollar had conducted an audit of MAP's business in March, 2023 and had issued an audit report which "raises a number of findings which cause the Franchisor concern, some of which *may* constitute breaches of the Franchise Agreement." *See* Ex. B. [emphasis supplied].

28.     The June 23, 2023 letter did not constitute the contractually mandated Notice referenced in section 18.2 of the Franchise Agreement given that it did not provide MAP with any clear direction as to whether a breach of the Franchise Agreement occurred, which provision had been breached and what cure period would be provided to MAP to rectify any alleged breach.

29.     Instead, Dollar only stated that certain matters "*may*" constitute some undefined breach. *See* Ex. B.

30.     The extent of any elaboration provided by Dollar was set forth in section 3.1 of the June 23, 2023 letter, which stated:

3.1   Whilst the Franchisee has responded to some of the Audit Report finding within the email at reference 5, the Franchisor still has a number of concerns with the findings raised in the Audit Report. This includes but is not limited to:

3.1.1.   potential competing business relationships through the same registered agents connected to More Automotive Products, Inc., ABAB Corporation, Payless Car Rental, and Easeway de Puerto Rico.

3.1.2.   high percentages of vehicles not meeting the contractual fleet age, required standards and/or manufacturers specifications; and

3.1.3.   areas of the locations not being adequately separated from that of competing businesses.

*See* Ex B, § 3.1.

31.   Admittedly, Dollar states that these issues are "concerns" rather than breaches of the Franchise Agreement. *Id.*

32.   Moreover, compliance with these "concerns" as of the date of renewal are not stated conditions to the renewal being granted. *Id.*

33.   Nevertheless, and in direct contravention with the terms of the Franchise Agreement, Dollar stated that "[a]s a result of the above, the Franchisor does not believe the Franchisee is continuing to meet the Renewal Requirements. Consequently, at this stage the Franchisor is not inclined to enter into a renewal of the Franchise Agreement without these outstanding issues being resolved." *See* Ex. B.

34.   To exacerbate this matter, the one-year extension also sought to change the requirements imposed on MAP on a going forward basis such that in exchange for being provided a one-year extension, MAP was required to:

8

4.3.1. attend and participate in meetings scheduled by the Franchisor in order to provide information on and agree proposed resolutions to any unresolved findings within the Audit Report, including but not limited to:

4.3.1.1. rectifying the open perimeters at all Locations and resolving any facilities or fleet sharing with competing car rental businesses;

4.3.1.2. providing information on and demonstrating proper segregation of Owners or senior representatives of the Franchisees involvement with competing car rental businesses;

4.3.1.3. providing assurances that business is not re-directed to competing car rental businesses;

4.3.1.4. the Open fence or easy access to a competing car rental business is not allowed and must be closed immediately;

4.3.1.5. providing information and assurances regarding agency relationships utilised by the Franchisee, if any.

4.3.2. work in good faith with the Franchisor to resolve the issues raised and/or provide full and sufficient evidence to disprove findings raised within the Audit Report, to the Franchisors satisfaction; and

4.3.3. work in good faith with the Franchisor to settle the indemnified amounts or reach an agreement satisfactory to both parties regarding the recovery of the Indemnitees settlement costs.

*See* Ex. B, §§ 4.3.1-4.3.3.

35.     Dollar also attempted to change the basis upon which a renewal might be granted in the future by requiring MAP to agree that "[i]n the event the Franchisor has ***continuing concerns*** with the Franchisee's compliance with the terms of the Franchise Agreement, the Franchisor shall not renew or extend the Franchise Agreement further." *See* Ex. B [emphasis supplied].

36.     Stated another way, rather than proceed with the manner in which the Franchise Agreement (and virtually every other franchise agreement in other franchise systems) measures compliance – by issuing a Notice of Default and affording the franchisee with a cure period in

9

which to address any stated defaults – Dollar was altering the balance of power even further in its direction by allowing it to make decisions on the future of MAP's business simply based upon its "concerns."

37.     Section 4.6 of Dollar's own June 23, 2023 letter acknowledged that the conditions sought to be imposed upon MAP were distinct and "additional" from those set forth in the Franchise Agreement, stating:

> For the avoidance of doubt, **failure by the Franchisee to meet its obligations under the Franchise Agreement and/or the additional conditions of extension set out within this letter** (once executed) may result in the Franchisor pursuing any necessary measures, rights or remedies available to it under the Franchise Agreement, law or otherwise that it sees fit without further notice or warning to the Franchisee, including exercise of the Guaranty, legal proceedings or terminating the Franchise Agreement immediately for material breach, if appropriate.

*See* Ex. B, § 4.6 [emphasis supplied].

38.     Finally, Dollar sought to seal the fate of MAP's business when it required MAP to agree to the following:

> 4.5     The Franchisee hereby acknowledges and agrees that, at any point during the Extension Period, if the Franchisee does not satisfy the conditions of extension set out within 4.3 above either on a single occasion or multiple occasions:
>
> 4.5.1.  the Franchise Agreement will not be renewed or extended further and, unless terminated earlier in accordance with the terms of the Franchise Agreement, the Franchise Agreement shall expire on 30th June 2024; and
>
> 4.5.2   the Franchisee hereby waives any right or remedy it may have for an indemnity or damages or otherwise, including compensation for clientele, as a result of the expiry or non-renewal of the Franchise Agreement or any decision by the Franchisor, not to grant any further franchise to the Franchisee.

*See* Ex. B, § 4.6 [emphasis supplied].

39. The terms of the June 23, 2023 letter are unconscionable, unacceptable and materially breach the terms of the Franchise Agreement.

40. As a result, MAP was not willing to sign the June 23, 2023 letter.

41. Efforts were made to reach a business solution between the parties. Those efforts, however, were unavailing.

42. As such, by letter dated February 22, 2024, Dollar terminated the franchise relationship with MAP. *See* February 22, 2024 Letter, attached hereto as **Exhibit "C."**

43. In the termination letter, Dollar sought to add additional reasons why it was not agreeing to renew the Franchise Agreement that were not previously raised, thus affording MAP with no opportunity to address these issues. *See* Ex. C.

44. Since the date of the termination letter, Dollar has closed MAP's access to the Dollar reservation systems and has removed the MAP business from booking channels.

45. Such acts have caused serious and irreparable harm to MAP's business.

46. Once MAP is removed from the reservations systems, it is unable to make reservations for any of its vehicles.

47. In addition, given that MAP has been removed from booking channels, it has no way of knowing how many reservations it is potentially losing.

48. These losses will undeniably destroy MAP's business, thereby causing irreparable injury to the business and the goodwill that it has established in the Puerto Rico market for nearly 30 years.

49. In addition, MAP will be forced to terminate its staff, thereby leaving those employees unemployed.

### *Law 75 Applies to The Parties' Dispute*

50.    Puerto Rico's Law 75 of June 24, 1964, 10 L.P.R.A. §278 ("Law 75") governs the business relationship between MAP and Dollar.

51.    In order to avoid the inequity of arbitrary termination of a franchise relationship once the franchisee, like MAP, has developed a local market for Dollar's products or services, Law 75 limits Dollar's ability to unilaterally end the relationship except for "just cause."

52.    Specifically, 10 L.P.R.A. § 278a provides that, "[n]otwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause."

53.    Law 75 has been described as "very much a 'oneway street' designed to protect dealers from the unwarranted acts of termination by suppliers." *Nike Int'l Ltd. v. Athletic Sales, Inc.*, 689 F.Supp. 1235, 1237 (D.P.R. 1988).

54.    Law 75 provides that "certain violations or nonperformance by a dealer of any provision included in the dealer's contract 'shall not be considered as being just cause unless the principal or grantor shows that such nonperformance may affect, or has truly and effectively affected the interests of such principal or grantor in an adverse or substantial manner in the development of the market, distribution of the merchandise or rendering of services.'" *Newell PR, Ltd. V. Rubbermaid*, 20 F.3d 15 (1st Cir. 1994).

55.    Per Law 75, minor contract breaches do not warrant the termination of a dealer's contract, and dealers must be given the opportunity to comply with any unmet obligations. *R.W. Int'l Corp. v. Welch Foods, Inc.,* 88 F.3d 49, 52 (1st Cir. 1996).

12

56.     For the reasons set forth above, there is no "just cause" for the termination of the Franchise Agreement.

57.     Given the absence of such "just cause," Dollar's termination of the franchise relationship and failure to provide MAP with a renewal agreement constitutes a plain violation of Law 75.

58.     Prior to the commencement of this action, all conditions precedent to the filing of this action have occurred, have been satisfied or have been waived.

59.     MAP has retained undersigned counsel to prosecute this action and has agreed to pay them a reasonable fee for their services.

## CAUSES OF ACTION

### Count I – Breach of Contract

60.     MAP incorporates by specific reference all allegations contained in paragraphs 1 through 59, above, as if fully set forth herein.

61.     The Franchise Agreement is a valid and binding contract.

62.     Dollar has breached the Franchise Agreement by failing to grant MAP a renewal franchise and/or failing to honor MAP's right to exercise its option to renew the franchise agreement.

63.     As a direct result, MAP has suffered substantial irreparable injury.

### Count II – Violation of Law 75

64.     MAP incorporates by specific reference all allegations contained in paragraphs 1 through 59, above, as if fully set forth herein.

65.     The relationship between MAP and Dollar is covered by Law 75 because MAP is a "[p]erson actually interested in a dealer's contract because of his having effectively in his charge

in Puerto Rico the distribution, agency, concession or representation of a given merchandise or service." 10 L.P.R.A. §278(a).

66.     In addition, through the Franchise Agreement, MAP and Dollar maintained a "[r]elationship established between a dealer and a principal or grantor whereby and irrespectively of the manner in which the parties may call, characterize or execute such relationship, the former actually and effectively takes charge of the distribution of a merchandise, or of the rendering of a service, by concession or franchise, on the market of Puerto Rico." 10 L.P.R.A. §278(b).

67.     Law 75 expressly provides that "[n]otwithstanding the existence in a dealer's contract of a clause reserving to the parties the unilateral right to terminate the existing relationship, no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for just cause."

68.     The termination of the franchise relationship and Dollar's failure to enter into a renewal Franchise Agreement was without just cause.

69.     The basis of Dollar's action was pretextual and not grounded in fact or law.

70.     Dollar has acted unconscionably and in bad faith, which has caused substantial damage to MAP.

71.     As a result, MAP is entitled to seek relief under Law 75.

**WHEREFORE,** Plaintiff MORE AUTOMOTIVE PRODUCTS, INC respectfully requests that the Court: (a) enter an Order granting temporary and preliminary injunctive relief requiring that Dollar: (1) honor MAP's right to exercise its option to renew the franchise agreement, (2) grant MAP a renewal franchise, and (3) reinstate MAP as a Dollar franchisee including without limitation, restoring MAP's access to Dollar's reservations systems and all booking channels, and (b) grant MAP all other relief that this Court deems just and proper.

Date:  May 15, 2024

Respectfully submitted,

**BRITO, PLLC**
*Counsel for Plaintiff*
2121 Ponce de Leon Boulevard
Suite 650
Coral Gables, FL 33134
Office:  305-614-4071
Fax:  305-440-4385

/s/ *Alejandro Brito*
**ALEJANDRO BRITO**
Florida Bar No. 098442
Primary: abrito@britopllc.com
Secondary: apiriou@britopllc.com

15