UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MORE AUTOMOTIVE
PRODUCTS, INC., a Puerto Rico
corporation,

    Plaintiff,

v.       Case No.:  2:24-cv-457-SPC-NPM

DOLLAR RENT A CAR, INC.,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff More Automotive Products, Inc.'s (MAP) Renewed Motion for Preliminary Injunction (Doc. 10),[1] along with Defendant Dollar Rent a Car's (Dollar) response in opposition.  (Doc. 28).  The Court held an evidentiary hearing on the motion, at which time both parties appeared and presented evidence and argument.  The Court reserved ruling at the hearing and now denies Plaintiff's motion.  The Court makes these findings of fact based on the record, the parties' papers, and the parties' exhibits.

---

[1] On the same date, MAP also filed a substantially similar motion titled "Plaintiff's Renewed Motion for Temporary and Preliminary Injunctive Relief."  (Doc. 9).  This motion is duplicative and—contrary to its title—sought preliminary injunctive relief (not a temporary restraining order).  For this reason and because Defendant Dollar appeared at the Court's preliminary injunction hearing, this duplicative motion is moot.

## BACKGROUND

Since about 1996, MAP has operated a Dollar Rent a Car franchise in Puerto Rico.  MAP and Dollar's relationship was most recently memorialized in a Franchise Agreement entered into on July 25, 2018.  The Agreement provided for a five-year renewal by MAP at the expiration of the Agreement, but on the following conditions:

> On the expiration of this Agreement, **provided [MAP is] not then in default of any provision of this Agreement** . . . and ha[s] **substantially complied with all the terms and conditions of this Agreement** and such other agreements during the terms thereof, [MAP] may, at [MAP's] option, renew the franchise granted to [MAP] under this Agreement . . . .

(Def. Ex. 2, at § 6.1).

If not renewed, the Agreement would expire on July 1, 2023.

In a December 2022 letter, Dollar reminded MAP that their Agreement was set to expire on July 1, 2023.  (Def. Ex. 3).  In the letter, Dollar also reminded MAP that to renew, MAP had to satisfy all applicable renewal requirements, "including without limitation" an enumerated six-item list. One of these listed items was: "[MAP] [is] and remain[s] in compliance with the Agreement (or any other agreement with us or our affiliates)."  The letter contained a warning that "[t]he foregoing is not intended to be a complete list of renewal requirements. FAILURE TO SATISFY ANY RENEWAL REQUIREMENTS WILL RESULT IN THE TERMINATION OF YOUR

2

RIGHTS UNDER THE AGREEMENT EFFECTIVE AS OF ITS EXPIRATION DATE."

In March 2023, Dollar audited MAP. The audit included an on-site inspection of vehicles. Dollar released the audit memo in May 2023 and sent it to MAP's owner, general manager, comptroller, and operations manager. (Def. Ex. 10). The audit report identified problem areas, including "several potential competing business relationships," overcharging customers for damage, various defects with MAP's vehicles ranging from underinflated tires to cosmetic damage, an undisclosed sublicensee / agency agreement, and missing fence line. The audit also contained the following:

> 4. An analysis of fleet age & mileage revealed the following:
>    - 169 of 534 (32%) vehicles were older than the 24-month maximum limit, **the age limit defined in the franchise agreement**.
>    - 255 of 534 (48%) vehicles had odometer readings greater than 40,000 miles, **the mileage limit defined in the franchise agreement**.
> 5. An analysis of fleet size revealed the following:
>    - During the years 2020 – 2022, the minimum average fleet size requirements were not met, **the threshold defined in the franchise agreement**.
>    - The minimum number of vehicles to be maintained each month (525) was not met during the years 2020-2022, **the requirement defined in the franchise agreement**.

On June 23, 2023, Dollar sent MAP another letter. (Def. Ex. 4). The letter reminded MAP that the Franchise Agreement was due to expire on July 1, 2023. In this letter, Dollar referenced the audit report, which "raise[d] a

number of findings which cause the Franchisor concern, some of which may constitute breaches of the Franchise Agreement." Dollar listed its "concerns" with specificity:

> 3.1.1. potential competing business relationships through the same registered agents connected to More Automotive Products, Inc., ABAB Corporation, Payless Car Rental, and Easeway de Puerto Rico.
> 3.1.2. high percentages of vehicles not meeting the contractual fleet age, required standards and/or manufacturers specifications; and
> 3.1.3. areas of the locations not being adequately separated from that of competing businesses.

(Def. Ex. 4).

Dollar said MAP did not meet the requirements for renewal of the Franchise Agreement, and Dollar said it was "not inclined to enter into a renewal of the Franchise Agreement without these outstanding issues being resolved." Dollar conveyed a willingness to work with MAP to resolve "any outstanding issues" and offered a one-year extension of the Franchise Agreement. The one-year extension required MAP to attend meetings with Dollar "in order to provide information on and agree [sic] proposed resolutions to any unresolved findings within the Audit Report." Dollar specifically outlined how it expected MAP to remedy the audit report's findings.

Dollar gave MAP until July 12, 2023, to accept or decline the one-year extension option. (Def. Ex. 4). MAP chose not to extend the Agreement, so in accordance with its original terms it expired on July 1, 2023.

4

On February 22, 2024, Dollar formally acknowledged MAP's rejection of the one-year extension and the termination of the Franchise Agreement. (Def. Ex. 5). Dollar warned that it would close MAP's reservation systems and remove MAP's locations from booking channels. Dollar has since made good on its warning. But MAP is still operating, procuring clients outside of those conventional channels.

MAP filed a complaint and motion for preliminary injunction in the District of Puerto Rico on March 19, 2024.[2] Dollar moved to dismiss the complaint and to stay MAP's request for preliminary injunction. These motions were referred to a magistrate judge, who issued a report and recommendation. Four days later, MAP voluntarily dismissed the case. MAP refiled the case in the Middle District of Florida two days after that.

## DISCUSSION

As a threshold matter, the parties dispute the Court's ability to issue a preliminary injunction. Dollar has moved to compel arbitration (Doc. 27). Dollar argues in its motion to compel that the relief MAP seeks is not injunctive relief, but rather specific performance of the parties' Franchise Agreement. This distinction is relevant, according to Dollar, because specific performance is not subject to the Franchise Agreement arbitration provision's carve-out:

---

[2] Case No. 3:24-cv-01135-PAD-HRV.

5

> Despite [the Parties'] agreement to arbitrate, [the Parties] shall each have the right . . . (2) to seek (in a proper case only) temporary restraining orders and temporary or preliminary injunctive relief from a court of competent jurisdiction, provided that the underlying claim is contemporaneously submitted for arbitration on the merits.

(Def. Ex. 2, at § 29.3).

The Franchise Agreement also provides that "the validity and scope of the arbitration obligations under this Section" will be "determined by an arbitrator and not a court."

The plain language of the Agreement provides for MAP to move for preliminary injunctive relief in this Court. MAP has filed a motion which facially requests preliminary injunctive relief. The Court is thus satisfied that it can decide MAP's Renewed Motion for Preliminary Injunction that is before it. The Court defers to the arbitrator any further analysis of the validity and scope of the Agreement.

The parties also dispute whether classic preliminary injunction elements apply or whether modified preliminary injunction elements apply under Law 75 (P.R. LAWS tit. 10, § 278). Dollar argues that the classic preliminary injunction elements should apply. MAP argues that under Law 75, two of the classic elements—irreparable injury and likelihood of success on the merits—are irrelevant.

6

The reality is somewhere in between. The parties have chosen to contract under Florida law: "ALL CLAIMS ARISING FROM THE RELATIONSHIP BETWEEN US AND YOU SHALL BE GOVERNED BY . . . THE LAWS OF THE STATE IN WHICH OUR CURRENT HEADQUARTERS IS LOCATED (CURRENTLY, FLORIDA)." (Def. Ex. 2, at § 29.6). But Law 75's protectionist policy arguably exists irrespective of a party's attempt to contract around it. P.R. LAWS tit. 10, § 278c ("The provisions of this chapter are of a public order and therefore the rights determined by such provisions cannot be waived").

Accordingly, Law 75's public policy purposes should be construed as an overlay to the classic preliminary injunction elements. *See Freightliner LLC v. P.R. Truck Sales,* 399 F. Supp. 2d 57, 61 (D.P.R. 2005) ("traditional [preliminary injunction] criteria apply equally to Act 75 cases, as long as they are tempered to the purposes of such Act"); *Nilo Watch Parts, Inc. v. Rado Watch Co., Ltd.,* No. 23-1085, 2023 WL 5814264, at *8 (D.P.R. Sept. 7, 2023).

The classic preliminary injunction elements impose a higher burden on MAP; the Law 75 overlay lessens that burden. But assuming without deciding that Law 75 applies, MAP is not entitled to a preliminary injunction.

Law 75 is a provision designed to protect Puerto Rican "dealers" in their contracts with "principals" or "grantors." P.R. LAWS tit. 10, § 278. It aims to "protect Puerto Rico's dealers from the harm caused when a supplier

7

arbitrarily terminates a distributorship once the dealer has created a favorable market for the suppliers products 'frustrating the legitimate expectations and interests of those who so efficiently carried out their responsibilities.'" *Nilo Watch Parts, Inc.*, 2023 WL 5814264, at *8 (quoting *Medina & Medina v. Country Pride Foods, Ltd.*, 858 F.2d 817, 820 (1st Cir. 1988)).

But Law 75 does not bar the termination of a contract with a Puerto Rican dealer. Instead, it states that "no principal or grantor may directly or indirectly perform any act detrimental to the established relationship or refuse to renew said contract on its normal expiration, except for *just cause*." P.R. LAWS tit. 10, § 278a (emphasis added). "Just cause" under Law 75 is "[n]onperformance of any of the essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service." P.R. LAWS tit. 10, § 278.

It is with these policy considerations in mind that the Court considers the classic preliminary injunction elements: (1) substantial likelihood of success on the merits, (2) irreparable injury, (3) whether the threatened injury to the movant outweighs the damage the proposed injunction may cause the opposing party, and (4) whether the injunction would be adverse to the public

interest. *Forsyth Cnty. v. United States Army Corps of Eng'rs*, 633 F.3d 1032, 1039 (11th Cir. 2011).

First, the Court is doubtful of MAP's likelihood of success on the merits.[3] The Franchise Agreement clearly states that MAP could not renew if MAP breached. And just in case MAP forgot that provision, Dollar reminded MAP about it in its December 2022 letter.

But there is ample evidence to suggest that MAP breached the Franchise Agreement. Section 11.17 of the Franchise Agreement bars MAP from assisting, lending money to, or diverting actual or prospective business to competing rental businesses. (Def. Ex. 2). Yet it appears that MAP's Director and President, Alberic Colon Zambrana, was doing all of the above with his children's competing car rental businesses. (Def. Ex. 6-9, 10, 13b).

Section 11.4 of the Franchise Agreement (along with Attachment E) provides specific conditions for MAP's fleet—namely, that MAP should maintain at least 525 vehicles that are not more than two years old and that have not been driven more than 40,000 miles. (Def. Ex. 2). Yet an on-site audit of MAP's inventory revealed that 32% of MAP's fleet was older than two years,

---

[3] The Court notes *Next Step Medical v. Bromedicon*, 190 D.P.R. 474 (P.R. 2014), wherein the Supreme Court of Puerto Rico said that "a petitioner is not required to show a likelihood of prevailing at the trial on the merits." But in the same opinion, the Supreme Court of Puerto Rico said that "it must be crystal clear that standards of judicial review we reproduce today are not absolute requirements. Rather, they are guidelines that move the court's sound discretion in deciding whether the evidence presented warrants this extraordinary remedy."

48% of the fleet had more than 40,000 miles, and from the years 2020-2022, MAP had not met the minimum number of vehicles required. (Def. Ex. 10).

Dollar also alleges violations of Section 9.1 based on MAP's "general offsell" status, Section 17.1 for impermissible use of Dollar's marks (of which there is photographic evidence), and Section 24.2 for MAP's failure to pay a $665,980 indemnity obligation to Dollar. In light of all the evidence presented to the Court, MAP has not met its burden to convince the Court that it is likely to succeed on the merits.

Under Law 75, Dollar can refuse MAP's renewal of its contract if Dollar has "just cause." "Just cause" exists under Law 75 when the dealer (MAP) fails to perform the "essential obligations of the contract" or commits "any action or omission . . . that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service." P.R. LAWS tit. 10, § 278(d). As discussed above, MAP violated several essential obligations of the Franchise Agreement.

MAP maintains that it was not on notice of its breaches, and so it would be unfair to allow Dollar to use those breaches as just cause. But even if Law 75's grace created a safe haven for contracting parties to be ignorant of the content of their contracts, MAP's fairness argument still fails. MAP was informed it was in breach in no uncertain terms via the May 2023 audit, more than a month before the expiration of the Franchise Agreement:

10

    4. An analysis of fleet age & mileage revealed the following:
- 169 of 534 (32%) vehicles were older than the 24-month maximum limit, **the age limit defined in the franchise agreement**.
- 255 of 534 (48%) vehicles had odometer readings greater than 40,000 miles, **the mileage limit defined in the franchise agreement**.

    5. An analysis of fleet size revealed the following:
- During the years 2020 – 2022, the minimum average fleet size requirements were not met, **the threshold defined in the franchise agreement**.
- The minimum number of vehicles to be maintained each month (525) was not met during the years 2020-2022, **the requirement defined in the franchise agreement**.

(Def. Ex. 10).

And as an additional consideration under Law 75, MAP's assistance to other car rental establishments adversely affected Dollar's interest in "promoting the marketing or distribution of the merchandise or service." Several customers complained via public review that they were shuffled back and forth between Dollar and Payless Car Rental. (Def. Ex. 13b). Those customers left Dollar one- or two-star reviews as a result.

To be sure, Law 75 advocates for Puerto Rican dealers over principals. But it "aims to prevent the *arbitrary* termination of a distribution contract to prevent injury to the dealer's interests." *Next Step Medical v. Bromedicon*, 190 D.P.R. 474 (P.R. 2014) (emphasis added). The termination of this Franchise Agreement does not appear to be arbitrary—it appears to be backed by reason.

11

Moving to the next factor, MAP cannot prove irreparable injury. MAP argues that there is no measurable method compute its damages, and therefore MAP's injury is irreparable. But this is simply untrue. An injury is "'irreparable' only if it cannot be undone through monetary remedies." *Ne. Fla. Chapter of Ass'n of Gen. Contractors v. Jacksonville,* 896 F.2d 1283, 1285 (11th Cir. 1990). MAP claims that it is losing an untold amount of revenue by not having access to Dollar's booking channels. The natural remedy for a decrease in revenue resulting from breach of contract is money damages, and the revenue lost can be estimated from MAP's 30 years in business.

But the inquiry does not end there, because irreparable injury is not necessarily required when assessing preliminary injunctive relief under Law 75. *See Next Step Medical v. Bromedicon*, 190 D.P.R. 474 (P.R. 2014); *Waterproofing Sys., Inc. v. Hydro-Stop, Inc.*, 440 F.3d 24 (1st Cir. 2006). That said, MAP should need to present at least *some* evidence of injury to obtain injunctive relief, and it has not done so.

MAP has not supported its claims that it is "losing goodwill" and will be forced to shut down. In fact, it is unclear whether MAP is even losing money at all—much less in dire straits. Around November 2023, MAP *voluntarily* stopped using Dollar's booking system to—in the words of MAP's Operations Manager—"maximize [its] revenue." (Def. Ex. 12). As of November 2023, MAP had put itself into offsell status—showing that MAP's cars were fully booked

12

when they were not—for the entirety of 2024. So it appears that MAP neither needed nor wanted access to Dollar's booking systems in 2024. And MAP has not presented evidence of the damages it has incurred or its current financial condition.[4] So MAP has not proven injury, much less irreparable injury.

And finally, in light of the overlap between policy considerations and the balance of harms to the parties, the Court considers these classic preliminary injunction elements together. In this analysis, the Court keeps in mind Law 75's admonition that "the court shall consider the interests of all parties concerned and the purposes of the public policy contained in [Law 75]." P.R. LAWS tit. 10, § 278b-1.

The right to freedom of contract is important; without it, parties would have no incentive to enter into contracts. While Law 75 limits freedom of contract by overriding some principal-friendly terms, Law 75 does not force principals to maintain contracts breached by Puerto Rican dealers. And while Law 75 provides a presumption that a contract should be renewed after its normal expiration, it does not go so far as to advocate for involuntarily servitude when there is just cause to terminate a contract.

---

[4] MAP's only evidence on this point is a conclusory declaration from its President, which says, "Since the date of the termination letter, Dollar has closed MAP's access to the Dollar reservation systems and has removed MAP's business from booking channels. Such acts have caused serious and irreparable harm to MAP's business . . . These losses will undeniably destroy MAP's business, thereby causing irreparable injury to the business and the goodwill that it has established in the Puerto Rico market for nearly 30 years. MAP will be also be forced to terminate its staff, thereby leaving those employees unemployed." (Pltf. Ex. 5).

To grant MAP injunctive relief, the Court would have to abandon the principle of freedom of contract entirely. There is credible evidence that MAP was in material breach, was on notice of its breach, and refused opportunities to cure. This included Dollar's offer of a one-year extension of the Franchise Agreement, which MAP refused. MAP thus let the Franchise Agreement expire on July 1, 2023, and asks now, almost a year later, for the Court to reinstate the Agreement.

And the harm caused in reinstating the Franchise Agreement stretches beyond just abstract contract principles. The harm to Dollar is concrete—it will be forced to maintain a business relationship with a breaching party until the case can be resolved on the merits. Dollar will be forced to continue its relationship with a franchisee who assists competing rental businesses, maintains an inadequate fleet using Dollar's name, and misuses Dollar's marks, among other infractions. But the harm to MAP is speculative—is MAP losing business? Or does its voluntary offsell suggest that its revenue might be *increasing* by not booking through Dollar? Is MAP's health as a business in imminent distress? MAP has been locked out of Dollar's booking system for months, and yet is still operational and—based on MAP's President's declaration—has not had to terminate any staff. If MAP cannot put forth evidence of injury, then the Court cannot find the threatened injury to MAP outweighs the damage the injunction would cause Dollar.

And considering the public policy behind Law 75 more broadly, it is not clear that Dollar is the principal the legislature intended to protect against. In its Statement of Motives for Law 75, the legislature made its targets clear: "The Commonwealth of Puerto Rico cannot remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers . . . *as soon as the[y] have created a favorable market and without taking into account their legitimate interests.*" *Next Step Medical v. Bromedicon*, 190 D.P.R. 474 (P.R. 2014) (citing Law 75's Statement of Motives) (emphasis added). Dollar's relationship with MAP extends nearly 30 years. And before formally terminating the Agreement in February 2024 (more than six months after its natural expiration), Dollar made a good faith attempt to get MAP back in compliance with the Agreement's terms so Dollar and MAP's relationship could continue. Dollar did not unjustly abandon MAP as soon as MAP had created a favorable market for Dollar in Puerto Rico—it abandoned MAP after MAP seemingly breached the Agreement and refused to cure.

"Although Law No. 75 was expressly enacted to protect the dealers' interests, the statute's extraordinary remedy must not be granted automatically." *Next Step Medical v. Bromedicon*, 190 D.P.R. 474 (P.R. 2014). And the Court does not see good cause to grant MAP an extraordinary remedy here.

15

Accordingly, it is now

**ORDERED:**

1. Plaintiff More Automotive Products, Inc.'s Renewed Motion for Preliminary Injunction (Doc. 10) is **DENIED**.

2. Plaintiff More Automotive Products, Inc.'s Renewed Motion for Temporary and Preliminary Injunctive Relief (Doc. 9) is **DENIED** as moot.

3. Defendant Dollar Rent a Car, Inc.'s Motion to Compel Arbitration (Doc. 27) is **GRANTED** in part and **DENIED** in part.  The Court **GRANTS** Dollar's Motion to the extent that it requests the Court compel arbitration after the Court's ruling on MAP's Motion for Renewed Motion for Preliminary Injunction (Doc. 10).  The Motion is **DENIED** in all other respects.

4. The Clerk is **DIRECTED** to stay this case pending completion of arbitration.  The Clerk is **DIRECTED** to add a stay flag to the file.

5. The parties are **DIRECTED** to jointly notify the Court when arbitration has ended and if the stay is due to be lifted within seven days of those proceedings ending.  The parties are **DIRECTED** to file a joint report on the status of arbitration on or before September 2, 2024, and every ninety days thereafter until the Court says otherwise.

**DONE** and **ORDERED** in Fort Myers, Florida on June 27, 2024.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record

17